# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALFREDO RODREGUEZ,[1] | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    **Case No. 07-CV-410-GKF-PJC** |
| | ) |
| GREG PROVENCE, Warden, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner Alfredo Rodriguez, a state prisoner appearing *pro se*. Respondent filed a response to the petition (Dkt. # 11), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. #s 11, 12, and 13). Petitioner filed a reply (Dkt. # 14). On May 18, 2010, Petitioner filed a "motion for declaration of status" (Dkt. # 21). For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied. Petitioner's motion for declaration of status shall be declared moot.

### *BACKGROUND*

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. Following review of the record, including the relevant transcripts and exhibits, this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals ("OCCA") in its opinion resolving petitioner's direct appeal is adequate and accurate. The OCCA summarized the facts, as follows:

---

[1]    Throughout the state court record, Petitioner's name is spelled "Rodriguez."

Lindsey Jacobson was staying with Rodriguez at his apartment in Tulsa.  She provided the facts on which the conviction was based.  On the evening before Thanksgiving, November 24, 2004, Jacobson and Rodriguez were out "bar hopping." They ran into Rodriguez's close friend Jeff Calderon[2] at Mom's bar.  Jacobson and Rodriguez left the bar and Calderon remained.  Later, at about 2:00 a.m., Jacobson called the bar and told Calderon that she could not pick him up.  Calderon, who had been invited over by Rodriguez, arrived at Rodriguez's apartment about fifteen minutes later.  He brought some beer and some barbeque.  After arriving, Calderon took out some cocaine, and he and Jacobson each snorted some of the cocaine.

Sometime during the evening Jacobson and Calderon started talking about the Army and military topics.  According to Jacobson, it appeared that Rodriguez was getting mad that she and Calderon were getting along so well.  A while later Jacobson went to the bedroom to lie down.  Calderon followed her into the bedroom, and Jacobson, not wanting Rodriguez to get the wrong idea and become angry, told Calderon that if he was going to lie down, she would leave.  However, Before Jacobson could leave the bedroom, Rodriguez walked in.

Rodriguez started yelling at Jacobson, accusing her of wanting to sleep with Calderon.  The argument moved out of the bedroom, and Calderon became involved in a discussion with Rodriguez, in Spanish.  Rodriguez told Calderon to leave, but Calderon would not leave as long as Rodriguez was mad at him.

Rodriguez went into his bedroom and retrieved a pistol.  Rodriguez and Calderon were yelling at each other in Spanish.  Rodriguez, in English, said that he was going to kill Calderon, Jacobson, and himself.  The argument continued between Rodriguez and Calderon.  Jacobson got behind the couch.  The lights went out, a shot was fired, the lights came back on, and Calderon was lying dead next to the table. He had been shot once through the head.

Jacobson, fearing for her own life, convinced Rodriguez to give her the gun. She took it outside and threw it over a fence.  They both left the apartment and started making plans to leave for Mexico.  At about 8:30 a.m. they checked into a motel.

During the day, Rodriguez left to go check on Calderon.  He returned and reported that Calderon was indeed dead.  He told Jacobson that he was going to dispose of his body.  He told her that he would have to cut him up like he did to some police officer in Mexico.

The next day, November 26, Jacobson reported what had happened to police. She met officers at Rodriguez's apartment and retrieved the gun.  Officers searched the apartment and found a large pool of blood where Calderon had been lying.  His body had been removed from the apartment.

Later that evening, Rodriguez was arrested.  Rodriguez told police that some man came to his apartment bearing beer and barbeque the evening before Thanksgiving.  He did not know the man's name.  He told police that the man was

---

[2]     In other parts of the state court record, the victim's last name is spelled "Caulderon."

drunk and was using drugs.  The man started acting funny and threatened to kill everyone.  Rodriguez tried to call the police, but the man prevented him from doing so.  According to Rodriguez, he was scared, so he retrieved his gun.  The man was not frightened by the gun and he said he would take it from Rodriguez.  The man stepped toward Rodriguez, and Rodriguez shot him one time.

He told police that he met with someone named Carlos who took his keys and agreed to dispose of the body.  When Rodriguez arrived home the evening of Thanksgiving, the body was gone.  However, Rodriguez was able to give police enough information to recover Calderon's body, which had been cut into pieces and disposed of in different locations.

(Dkt. # 11, Ex. 3).

As a result of those events, Petitioner was arrested and charged with First Degree Murder (Count 1) and Feloniously Pointing a Weapon (Count 2)[3] in Tulsa County District Court, Case No. CF-2004-5178. On June 14-16, 2005, Petitioner was tried by a jury. The jury acquitted Petitioner of Feloniously Pointing a Weapon, but found Petitioner guilty of First Degree Murder and recommended a sentence of life without the possibility of parole. On June 20, 2005, the trial court judge sentenced Petitioner in accordance with the jury's recommendation. Petitioner was represented during his criminal proceedings by attorneys Shena Burges and Curt Allen.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Stuart Southerland, Petitioner raised the following propositions of error:

Proposition 1: The State presented insufficient evidence that Appellant did not act in self-defense.

Proposition 2: All evidence related to the dismemberment of the victim should have been excluded.  At the very least, photographs depicting the dismemberment should not have been shown to the jury.
    a.    The evidence of dismemberment should have been suppressed.
    b.    The evidence of dismemberment should not have been presented through larger-than-life screen projections to the jury.

---

[3]    In Count 2 of the Information, Petitioner was charged with feloniously pointing a weapon at Lindsey Jacobson.  See Dkt. # 13, Tr. Trans. at 244.

Proposition 3:   It constituted reversible error to refuse to instruct the jury on the "reasonable hypothesis" test for circumstantial evidence without an instruction defining reasonable doubt.

Proposition 4:   It was reversible error to allow evidence that Appellant admitted to committing a similar offense in Mexico.  At the very least, it was error for the trial court to refuse Appellant's request for a limiting instruction.

Proposition 5:   Various instances of prosecutorial misconduct warrants the reversal of Appellant's conviction.

Proposition 6:   Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Proposition 7:   The accumulation of error in this case deprived Appellant of due process of law and a reliable sentencing proceeding, therefore necessitating reversal pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

See Dkt. # 11, Ex. 1.  In an unpublished opinion filed December 6, 2006, in Case No. F-2005-605 (Dkt. # 11, Ex. 3), the OCCA rejected each claim and affirmed the Judgment and Sentence of the trial court.

On January 3, 2007, Petitioner, appearing *pro se*, filed an application for post-conviction relief in the state district court. The state district court recognized eight claims: (1) newly discovered evidence of jury pool selection process was unconstitutional and denied a fair trial, (2) trial court lacked jurisdiction for a number of reasons, (3) sentence is unconstitutionally indeterminant [sic] and contrary under the State Legislature's definition of life sentences, (4) under new ruling of law life was arbitrarily set at 45 years and requires 54 days a year to be deducted, so a life sentence is discharged after serving 85% unless a jury made a determination that life was set in this case between 18 and 60 years, (5) ineffective assistance of appellate counsel in not raising Anderson v. State, (6) U.S. treaty with Mexico violated, (7) due process, double jeopardy and state statutes deprived trial court of jurisdiction to allow a trial on multiple counts in a single information, in one

4

proceeding, and same evidence, involving same act, and (8) ineffective assistance of counsel.  See Dkt. # 11, Ex. 5.  By order filed March 16, 2007, id., the state district court denied post-conviction relief.  Petitioner appealed. By order filed July 13, 2007, in Case No. PC-2007-290, see Dkt. # 11, Ex. 6, the OCCA affirmed the denial of post-conviction relief.

On July 26, 2007, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner identifies three grounds for relief, as follows:

| | | |
|---|---|---|
| Ground 1: | | Insufficient evidence act was not self-defense; evidence should have been excluded of other crimes; failure to instruct jury on heresay [sic] statements, reversible error; failure to instruct jury on hypothesis test for circumstantial evidence reversible error; prosecutorial misconduct requires reversal; denied effective assistance of trial and appellate counsel; error accumulation of errors of deprival [sic] of due process at sentencing proceedings requires reversal. |
| Ground 2: | | State post-conviction proceedings inadequate and ineffective to protect petitioner's United States Constitutional Rights. |
| Ground 3: | | See attached complete list of grounds raised and exhausted in this instant case, showing actual and factual innocence of petitioner defendant, and jury selection unconstitutional.  Petitioner's defense was prejudiced by irrelevant, unnecessary and inadmissible evidence of other alleged crimes, wrongs, or bad acts. |

See Dkt. # 1.  In response to the petition, Respondent asserts that Petitioner's claims do not justify relief under 28 U.S.C. § 2254(d), are without merit, or are procedurally barred. See Dkt. # 11.

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Respondent states that Petitioner has exhausted his state court remedies. See

Dkt. # 11, ¶ 4. The Court agrees and finds that consideration of Petitioner's claims is not precluded by the exhaustion requirement.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002); <u>Hooper v. Mullin</u>, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's ground one claims on direct appeal. However, in his petition, Petitioner simply lists the claims and makes no effort to explain how he

is entitled to relief under § 2254(d). The Court will not craft an argument for Petitioner.

Nonetheless, the claims adjudicated on direct appeal will be reviewed pursuant to § 2254(d).

### 1. Insufficient evidence to rebut Petitioner's claim of self-defense

Petitioner claims that the State failed to prove he did not act in self-defense.  On direct

appeal, the OCCA ruled as follows:

> This claim is based on the fact that Jacobson could not understand what Rodriguez and Calderon were saying to each other when they were arguing, as she does not understand the Spanish language.  However, the actions that Jacobson observed, speak louder than the words exchanged between Rodriguez and Calderon. Words alone cannot transform the speaker into the aggressor.  *McDonald v. State*, 1988 OK CR 245, ¶ 12, 764 P.2d 202, 205.
>
> Jacobson's testimony revealed that at all times Rodriguez was the aggressor. Although Calderon was over six-feet tall and Rodriguez was just barely five-feet tall, there was no indication that Rodriguez was afraid of Calderon.  Rodriguez had a pistol and Calderon was unarmed.  Rodriguez was angry, jealous and accusatory before the shooting.  The only evidence of self defense was Rodriguez's own self serving statement to the police.
>
> Even Rodriguez's actions after the shooting belie the fact that he was acting in self defense.  Rodriguez attempted to conceal his crime by disposing of the body, either by himself or by employing another person.  He lied about knowing Calderon, when the evidence indicated that they were close friends.
>
> The trial court instructed the jury on the requisite law regarding self-defense and the elements of the crime of first degree murder.  The evidence in this case was sufficient to support the jury's verdict.

(Dkt. # 11, Ex. 3).

In a habeas proceeding, we review the sufficiency of the evidence "in the light most

favorable to the prosecution" and ask whether "any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

(1979).  "This standard of review respects the jury's responsibility to weigh the evidence and to

draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935,

939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury'

discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.

Under Oklahoma law, when a defendant adequately raises self-defense at trial, the burden shifts to the state to prove the defendant did not act in self-defense. See Howell v. State, 882 P.2d 1086, 1092 (Okla. Crim. App. 1994).  In this case, Petitioner is not entitled to habeas relief on his claim that the state failed to prove he did not act in self-defense. As noted by the OCCA, the jury received instructions concerning Petitioner's defense of self-defense, see Dkt. # 13-6, O.R. at 105-112.   However, the jury also heard testimony by Lindsey Jacobson supporting the finding that Petitioner was not acting in defense of himself or of her. Jacobson testified that throughout the altercation between the two men, Petitioner was angry, mad, and threatening, see Dkt. # 13, Tr. Trans. at 276-79, and that the victim was unarmed and did not take any aggressive actions towards Petitioner, id. at 287-88.  She also testified that the victim never threatened her and that at no point did Petitioner do anything to defend her.  Id. at 311. In short, based on review of the record, the State presented sufficient evidence for a rational fact-finder to have found beyond a reasonable doubt that Petitioner did not act in self-defense and was guilty of First Degree Murder.  Therefore, the Court concludes that the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to or an unreasonable application of federal law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact).

### 2.  Improper admission of dismemberment evidence

As his second proposition of error raised on direct appeal, Petitioner claimed that the trial court erred in allowing admission of evidence demonstrating dismemberment of the victim's body. The OCCA denied relief on this claim finding that the evidence was "relevant to show the extent to which Rodriguez would go to cover up a crime, especially when he claimed that he acted in self defense." See Dkt. # 11, Ex. 3.  The OCCA further determined that "the photographs were not gruesome.  The photographs showed the handy work of the defendant."  Id.

"In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice."  United States v. Tome, 3 F.3d 342, 353 (10th Cir. 1993) (quoting United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted)), rev'd, 513 U.S. 150 (1995).

Upon review of the record, the Court finds Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair as a result of the admission of the challenged evidence. Even if the photographs could be characterized as "gruesome," courts have allowed graphic evidence of brutal murders, reasoning that defendants should not benefit from exclusion of the evidence "simply because their conduct was of a grisly nature." United States v. Lujan, 603 F.3d 850, 858 (10th Cir.

9

2010) (citing <u>United States v. Soundingsides</u>, 820 F.2d 1232, 1242-43 (10th Cir. 1987). In this case, the testimony and photographs demonstrating dismemberment of the victim were relevant to Petitioner's lack of truthfulness, especially regarding his defense of self-defense. Petitioner is not entitled to habeas corpus relief on this claim.

### 3. Improper admission of "other crimes evidence"

Next, Petitioner complains that the trial court judge improperly allowed introduction of other crimes evidence. On direct appeal, Petitioner claimed that the trial court erroneously allowed testimony that he had admitted to cutting up the body of a policeman in Mexico. The OCCA denied relief, after reviewing for plain error and determining that the challenged evidence was admissible as *res gestae*, as follows:

> Jacobson testified that Rodriguez said that he would dispose of Calderon by cutting him up, like he did to a police officer in Mexico. As other crimes evidence, no evidence was introduced that the event in Mexico ever occurred. Proof of "other crimes" must be clear and convincing. *Lott v. State*, 2004 OK CR 27, ¶ 40, 98 P.3d 318, 334-35. The State argues that this statement by Rodriguez does not constitute other crimes evidence, because it is merely a suggestion of another crime. *See Bear v. State*, 1988 OK CR 181, ¶ 22, 762 P.2d 950, 956 ("Any implication of another crime which is obvious only to defense counsel is not inadmissible as evidence of other crimes."). The State claims that it is merely a vague and braggadocios assertion.
>
> The statement is more than a suggestion of another crime, the statement is a statement against interest admitting another crime, similar to the one committed here. The evidence code gives credence to statements against penal interest. They are admissible to prove guilt. Although a confession alone, without independent evidence that a crime was committed, is not sufficient for a conviction, beyond a reasonable doubt, a confession might be clear and convincing evidence that a crime was committed. *See Fontenot v. State*, 1994 OK CR 42, ¶ 44, 881 P.2d 69, 82; *Johnson v. State*, 2004 OK CR 23, ¶ 11, 93 P.3d 41, 46.
>
> If this statement constituted clear and convincing evidence of another crime, it was admissible pursuant to 12 O.S.2001, § 2404(B). Furthermore, the statement might be admissible if it is part of the "*res gestae*."
>
> Evidence is considered *res gestae* a) when it is so closely connected to the charged offense as to form part of the entire transaction, b)

> when it is necessary to give the jury a complete understanding of the
> crime, or c) when it is central to the chain of events.
> *Rogers v. State*, 1995 OK CR 8, ¶ 21, 890 P.2d 959, 971 (and cases cited therein).
> The issue here is whether this Court should insulate defendants from
> statements they make while they are committing a crime. These words came out of
> the defendant's mouth, and they were made as the defendant was contemplating
> covering his tracks. The statements were so intertwined with the crime that they are
> part of the entire transaction. The statements were necessary to give the jury a clear
> picture of the events. As such, the statements are *res gestae* evidence and were
> admissible. Therefore, the admission of this evidence cannot be plain error.

(Dkt. # 11, Ex. 3).

As stated above, "[i]n a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" <u>Maes</u>, 46 F.3d at 987 (quoting <u>Tapia</u>, 926 F.2d at 1557). A habeas court evaluates admission of "other crimes evidence" under general due process principles to determine whether evidence was "introduced that is so unduly prejudicial that it renders the trial fundamentally unfair . . . ." <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991) (citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 179-83 (1986)); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 69-70 (1991); <u>Knighton v. Mullin</u>, 293 F.3d 1165, 1170 (10th Cir. 2002). The Tenth Circuit has held that this standard will be satisfied only if "the probative value of [the challenged] evidence is . . . greatly outweighed by the prejudice flowing from its admission . . . ." <u>Knighton</u>, 293 F.3d at 1171 (internal quotation marks omitted).

After reviewing the trial transcripts, the Court finds that the OCCA's rejection of Petitioner's claim on direct appeal is neither contrary to, nor an unreasonable application of, these general principles. The state appellate court's rulings that the challenged statements constituted *res gestae* and the admission of the testimony was necessary to give the jury a clear picture of the events were not erroneous. Furthermore, Petitioner has failed to demonstrate that the admission of the testimony

11

rendered his trial fundamentally unfair.  Petitioner is not entitled to habeas corpus relief on this claim.  28 U.S.C. § 2254(d).

### 4.  Failure to give proper jury instructions

On direct appeal, Petitioner raised two challenges to the jury instructions.  First, he argued that the trial court erred in failing to give a limiting instruction concerning the admission of other crimes evidence.  The OCCA rejected the claim, concluding that because "the statement constituted *res gestae* evidence, an instruction on other crimes evidence was not necessary.  There was no error in the failure to give the instruction."  See Dkt. # 11, Ex. 3.  Petitioner also claimed that the trial court erred in giving the uniform instruction on circumstantial evidence instead of an instruction based on the "reasonable hypothesis test" or an instruction defining reasonable doubt.  On direct appeal, the OCCA denied relief on this claim, as follows:

> [T]he conviction in this case was had by both direct and circumstantial evidence.  There was no reason to give any instruction regarding circumstantial evidence.  *Davis v. State*, 2004 OK CR 26, ¶ 27, 103 P.3d 70, 79.  The reasonable hypothesis test has never been the test utilized when evidence is both direct and circumstantial.  *Drew v. State*, 1989 OK CR 1, ¶ 8, 771 P.2d 224, 227; *Hinkle v. State*, 1989 OK CR 4, ¶ 8, 771 P.2d 232, 234.  Therefore, overruling *Easlick* in this case would be improper.  Furthermore, giving an instruction on the definition of reasonable doubt has never been a part of Oklahoma jurisprudence.  This Court will not delve into that realm here.

(Dkt. # 11, Ex. 3).

"A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law."  Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) (citation omitted).  When an allegedly erroneous jury instruction is given, this Court examines only "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Stated another way,

"'[h]abeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.'" Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)).   Furthermore, where a petitioner challenges the trial court's refusal or failure to give a specific instruction, this Court uses a highly deferential standard of review in evaluating the alleged error. Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999).   The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

The Court has reviewed the instructions given to Petitioner's jury. See Dkt. # 13-6, O.R. at 85-128.  The Court agrees with the OCCA's resolution of Petitioner's claim based on the trial court's refusal to issue a limiting instruction on the use of "other crimes evidence."  Petitioner has not demonstrated that he suffered prejudice as a result of the trial court's refusal to give a limiting instruction concerning "other crimes evidence."  In addition, Petitioner has not demonstrated that his trial was rendered fundamentally unfair as a result of the instruction issued on circumstantial evidence. In Instruction Nos. 7, 8, 9, and 10, the jury was properly instructed concerning direct and circumstantial evidence, and that "[a]ll of the facts and circumstances, taken together, must establish to your satisfaction the guilt of the defendant beyond a reasonable doubt." Id., O.R. at 94. Upon review of the instructions as a whole, the Court finds the OCCA's adjudication of Petitioner's challenges to the jury instructions was not contrary to or an unreasonable application of federal law

as determined by the Supreme Court.  Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### 5. Prosecutorial misconduct

Petitioner seeks habeas corpus relief on his claim that the prosecutor made improper comments.  On direct appeal, he claimed that during closing argument, the prosecutor cast aspersions on defense counsel, the defendant, and the defendant's case in general.  The OCCA reviewed for plain error and found that "the comments related to the credibility of the witnesses, and they were in direct response to defense counsel's closing argument.  The comments did not rise to the level of plain error."  (Dkt. # 11, Ex. 3).

Petitioner in this case does not allege that the prosecutor's improper remarks impacted a specific constitutional right, such as the privilege against compulsory self-incrimination.  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Patton v. Mullin, 425 F.3d 788, 811 (10th Cir. 2005).  Instead, he argues that the prosecutor's improper remarks deprived him of a fair trial. As a result, habeas corpus relief is available only if the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly, 416 U.S. at 642-648; Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). "[I]nappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11 (1985). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994)

(quotations omitted); <u>see</u> <u>also</u> <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1275-76 (10th Cir. 1999).  A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice."   <u>United States v. Russell</u>, 411 U.S. 423, 432 (1973).

Petitioner is not entitled to habeas corpus relief on this claim because he has failed to demonstrate that the OCCA's refusal to reverse his convictions was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. The Court agrees with the OCCA that the challenged comments were made in direct response to defense counsel's closing argument. Having reviewed the trial transcripts, the Court finds the prosecutor's comments could not plausibly have tipped the scales in favor of the prosecution.  Additionally, in light of the ample evidence in the record of Petitioner's guilt, <u>see</u> <u>Fero</u>, 39 F.3d at 1474, the Court finds that there is not a reasonable probability that the jury's finding of guilt would have been different without the allegedly improper comments. <u>See</u> <u>Smallwood</u>, 191 F.3d at 1276.  Petitioner is not entitled to habeas corpus relief on this claim.  28 U.S.C. § 2254(d).

### 6.  Ineffective assistance of counsel

#### a.  trial counsel

In his sixth proposition of error on direct appeal, Petitioner asserted that trial counsel provided ineffective assistance in failing to preserve issues for appeal.  In its opinion affirming Petitioner's conviction and sentence, the OCCA noted the absence of contemporaneous objections as to testimony that Petitioner admitted committing a similar offense in Mexico (proposition 4) and as to various incidents of prosecutorial misconduct (proposition 5).  As a result, the OCCA reviewed those proposition for plain error. <u>See</u> Dkt. # 11, Ex. 3. Petitioner's ineffective assistance of counsel claim is based on trial counsel's failure to enter contemporaneous objections. The OCCA denied

relief, citing Strickland v. Washington, 466 U.S. 668, 687 (1984), and finding that Petitioner could not show prejudice.  See Dkt. # 11, Ex. 3.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

The Court agrees with the OCCA that Petitioner cannot satisfy the prejudice prong of the Strickland standard.  Even if trial counsel performed deficiently in failing to preserve the direct

appeal issues by contemporaneous objections, Petitioner cannot show, in light of the evidence presented at trial, that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on this claim.

### b.  appellate counsel

In his application for post-conviction relief, see Dkt. # 11, Ex. 4, Petitioner claimed that his appellate counsel provided ineffective assistance when he failed to raise a claim based on Anderson v. State, 130 P.3d 273 (Okla. Crim. App. 2006) (holding that a jury should be instructed that a defendant convicted of a specifically enumerated serious felony is required to serve 85% of any sentence imposed before being eligible for parole). He also noted that appellate counsel refused to raise the other claims identified in the application for post-conviction relief.  See Dkt. # 1. The state district court denied post-conviction relief, citing Strickland v. Washington, 466 U.S. 668 (1984), and concluding that Petitioner had not satisfied either prong of the Strickland standard.  On post-conviction appeal, the OCCA affirmed the denial of post-conviction relief, but provided no analysis of Petitioner's claims of ineffective assistance of appellate counsel. See Dkt. # 11, Ex. 6.

Although the OCCA did not specifically address the claim, the decision to deny relief is nonetheless entitled to deference.  See Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999) (finding that deference under § 2254(d) is owed to the state court's result, even if its reasoning is not expressly stated). Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of appellate counsel unless he demonstrates that the OCCA's decision to deny relief was

an unreasonable application of <u>Strickland</u>. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. <u>Id.</u>; <u>see also</u> <u>Parker v. Champion</u>, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing <u>United States v. Cook</u>, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. <u>Hawkins</u>, 185 F.3d at 1152; <u>see also</u> <u>Cook</u>, 45 F.3d at 394. The relevant questions for assessing a petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, petitioner "would have prevailed on his appeal." <u>Neill</u>, 278 F.3d at 1057 (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000) (applying <u>Strickland</u>, 466 U.S. at 687-91)).

Petitioner argued in his post-conviction application that appellate counsel provided ineffective assistance because he failed to pursue an argument based on <u>Anderson</u>, 130 P.3d 273 (2006).  <u>Anderson</u>, decided on February 22, 2006, after petitioner was convicted in June of 2005, and after Petitioner filed his brief in chief on January 9, 2006, states that "[a] trial court's failure to instruct on the 85% Rule in cases before this decision will not be grounds for reversal." <u>Id.</u> at 283. Thus, <u>Anderson</u> provides that the decision is to be given only prospective relief. <u>Anderson</u> also states that its ruling "does not amount to a substantive change in the law." <u>Id.</u> at 283.

When ineffective assistance of counsel is alleged, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error. United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997) (citations omitted). It is not reasonable to expect Petitioner's appellate counsel to guess that a decision characterized by the issuing court as non-substantive and as not providing grounds for reversal, would apply to petitioner's appeal. Appellate counsel was not objectively unreasonable in failing to raise a claim based on Anderson.

Furthermore, the additional claims omitted by appellate counsel as identified by Petitioner in his state application for post-conviction relief are either based on various legal principles with little if any factual support or are speculative and, at best, conclusory. See Dkt. # 11, Ex. 4. The Court cannot find that appellate counsel was "objectively unreasonable" in failing to raise the omitted claims. Furthermore, even if appellate counsel's performance was objectively unreasonable, there is no likelihood that Petitioner would have prevailed on his appeal. Petitioner has failed to demonstrate entitlement to habeas corpus relief on his claim of ineffective assistance of appellate counsel.

### 7. Cumulative error

On direct appeal, petitioner alleged that the cumulative effect of trial errors deprived him of a fair trial. See Dkt. # 1. The OCCA rejected this claim, stating that "[w]e have found no individual error requiring relief; therefore, there are no multiple errors to accumulate." See Dkt. # 11, Ex. 3. However, the rationale reflected by the OCCA's ruling, "taken on its face, would render the cumulative error inquiry meaningless, since it indicates that cumulative error may be predicated only upon individual error already requiring reversal." See Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003) (quoting Willingham v. Mullin, 296 F.3d 917, 935 (10th Cir. 2002)). Because the OCCA

used an incorrect standard, this Court shall review petitioner's cumulative error claim de novo, applying the controlling federal standards. See id.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having found no error in this case, the Court finds no basis for a cumulative error analysis. Therefore, petitioner is not entitled to habeas corpus relief on this ground.

## C.  Challenge to state post-conviction procedures

As his second ground for relief, Petitioner claims that Oklahoma's post-conviction procedures are inadequate and ineffective to protect his constitutional rights. This claim is not cognizable on federal habeas corpus review.  The Tenth Circuit Court of Appeals has consistently ruled that challenges to state post-conviction procedures do not rise to the level of federal constitutional claims cognizable on habeas corpus review.  See Phillips v. Ferguson, 182 F.3d 769, 773-74 (10th Cir. 1999); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (when petitioner asserts no constitutional trial error, but only error in the state post-conviction procedure, no relief can be granted in federal habeas corpus); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993).  As a result, Petitioner's ground two claim challenging Oklahoma's post-conviction procedures because

they are allegedly inadequate to allow him to obtain relief is not cognizable in this federal habeas corpus and shall be denied on that basis.

## D.  Procedural bar (ground 3)

In ground 3 of his habeas petition, Petitioner refers to an attached list of grounds of error "showing actual and factual innocence of petitioner defendant, and jury selection unconstitutional." See Dkt. # 1.  The list cited by Petitioner includes the claims raised on direct appeal, see discussion in Part B above, and the claims raised on post-conviction appeal.  In affirming the denial of post-conviction relief, the OCCA declined to consider the post-conviction claims as a result of Petitioner's failure to raise the claims on direct appeal. See Dkt. # 11, Ex. 6.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court has declined to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009); Maes, 46 F.3d at 985; Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is independent if it is separate and distinct from federal law."  Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)).

In this case, the OCCA imposed a procedural bar on Petitioner's post-conviction claims.  See Dkt. # 11, Ex. 6.  Citing state law, the OCCA determined that "all issues which could have been

previously raised but were not are waived and may not be the basis of a post-conviction application." Id. at 1. As a result of the OCCA's ruling on post-conviction appeal, the Court finds that part of Petitioner's ground 3 claim, seeking habeas relief on claims raised on post-conviction appeal, is procedurally barred. The OCCA's procedural bar, based on Petitioner's failure to raise the claims on direct appeal is an "independent" state ground because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. In addition, the state procedural bar is adequate to preclude habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999).[4]

This Court may not consider Petitioner's procedurally barred claims unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered. See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

---

[4]     Petitioner's post-conviction claims are in large part incoherent. However, to the extent Petitioner raised a claim of ineffective assistance of trial counsel that is not procedurally barred, it is without merit. In light of the evidence presented at trial, Petitioner has not demonstrated that the result of the proceeding would have been different but for counsel's allegedly deficient performance. Strickland, 466 U.S. at 694.

The Court recognizes that in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. See Murray, 477 U.S. at 488-89. However, the ineffective assistance of counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In this case, Petitioner raised a claim of ineffective assistance of appellate counsel on post-conviction appeal. The Court has determined above that appellate counsel did not provide ineffective assistance in failing to raise the defaulted claims on direct appeal. Petitioner also claims to have newly discovered evidence.  However, as determined by the OCCA, "Petitioner's claims, if meritorious, could have and would have been discovered for trial or on direct appeal by the exercise of due diligence."  (Dkt. # 11, Ex. 6 (citation omitted)). Therefore, the evidence does not qualify as "newly discovered" for purposes of overcoming the procedural bar.  Petitioner has failed to demonstrate "cause" to overcome the procedural bar.

Petitioner may also overcome the procedural bar applicable to his defaulted claims under the fundamental miscarriage of justice exception. That exception is applicable only when a petitioner asserts a claim of actual innocence.  Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). In this case, Petitioner claims that he is innocent of the crime for which he was convicted. However, he fails to make a "colorable showing" of factual innocence. He presents no "new evidence" supporting his claim of actual innocence. He does not fall within the "fundamental miscarriage of justice" exception to the doctrine of procedural bar.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, the Court concludes that the defaulted claims, as identified in ground 3 of the petition, are procedurally barred. Coleman, 510 U.S. at 724.  Petitioner is not entitled to habeas corpus relief on those claims.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus, as amended, should be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2. Petitioner's motion for declaration of status (Dkt. # 21) is **declared moot**.

3. A separate judgment shall be entered in this matter.

**DATED** this 15th day of December, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma